FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2025 NOV 18 AM 8:04

MARGARET BOTKINS, CLERK
CASPER

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

OCTAVIO DURAN SERRATO,

Petitioner,

v.

ANDY KOPP, Sheriff, Uinta County, Wyoming;
DIRECTOR, Denver U.S. Immigration and Customs Enforcement Field Office;
JASON KNIGHT, Director of Salt Lake City U.S. Immigration and Customs Enforcement Field Office;
KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; and
PAMELA BONDI, Attorney General of the United States,

Respondents.

Case No. 25-CV-245-SWS

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

This matter comes before the Court on Octavio Duran Serrato's Petition for Writ of Habeas Corpus seeking relief under 28 U.S.C. § 2241. (ECF 1.) Federal Respondents filed an opposition thereto (ECF 18), and Mr. Serrato replied (ECF 19). The Court held a hearing on the matter on November 12, 2025. (ECF 22.) Having considered the parties' arguments, reviewed the record herein, and being otherwise fully advised, the Court concludes Mr. Serrato is due an individualized bond hearing under 8 U.S.C. § 1226(a).

## **FACTUAL BACKGROUND**

This factual background is taken from the parties' submissions and does not appear to be in dispute. Mr. Serrato is a native and citizen of Mexico, and he has never been lawfully

"admitted"[1] to the United States. (ECF 18-1 p. 2.) He unlawfully entered the United States and was permitted to voluntarily return to Mexico in 2000 and again in 2007. (*Id.*) Sometime thereafter, but at an unknown place and time, he unlawfully entered the United States a third time. (*Id.*) He has never applied or petitioned to be admitted into the United States lawfully. (*Id.*) Mr. Serrato says he has been residing in the United States for nearly the last 20 years (ECF 1 p. 1), albeit unlawfully.

On October 19, 2025, agents from U.S. Immigration and Customs Enforcement (ICE) encountered Mr. Serrato while conducting a separate criminal investigation at a racetrack in Wilder, Idaho. (ECF 1 p. 1; ECF 18-1 p. 2.) ICE agents determined Mr. Serrato did not possess valid immigration documentation authorizing him to be in the United States and had illegally entered the country. (ECF 18-1 pp. 2-3.) ICE agents detained Mr. Serrato and transported him to an ICE field office in Salt Lake City, Utah, for processing, and then to the Uinta County Detention Center in Evanston, Wyoming, for detention pending removal proceedings. (*Id.* p. 3.) He has remained detained there for several weeks without a bond hearing. His initial hearing in the removal proceedings is currently scheduled for November 24, 2025, before the Las Vegas Immigration Court in Las Vegas, Nevada. (*Id.*)

Mr. Serrato relies on 8 U.S.C. § 1226(a) in arguing Respondents have erroneously deprived him of a bond hearing. He asks the Court to order his immediate release or, alternatively, to require Respondents to hold a bond hearing wherein they have the burden of proving continued detention is warranted based on Mr. Serrato being a danger to the community or a flight risk. Respondents contend Mr. Serrato is detained under 8 U.S.C. § 1225(b)(2), which does not give him any right to

---

[1] The Immigration and Nationality Act (INA) defines "admission" and "admitted" to mean "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

a bond hearing.

## LEGAL BACKDROP

The dispute in this case stems from a recent change in how the Government approaches the arrest and detention of noncitizens who are already present within the United States versus those seeking to enter the United States. The Western District of New York recently explained the change:

> Until very recently, the United States Department of Homeland Security ("DHS") ... operated under two separate statutory schemes governing the detention of noncitizens: 8 U.S.C. § 1225, covering noncitizens when they arrive at the border or when they enter illegally and are caught very close to the border, and 8 U.S.C. § 1226, covering noncitizens who successfully have entered the United States—whether legally or illegally. Courts, including the United States Supreme Court, have echoed that understanding. *See, e.g. Jennings*, 583 U.S. at 289, 138 S.Ct. 830 ("In sum, U.S. immigration law authorizes the [g]overnment to detain certain [noncitizens] *seeking admission into* the country under §§ 1225(b)(1) and (b)(2). It also authorizes the [g]overnment to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." (emphasis added)). But like much immigration law of late, that long-recognized distinction is no more—at least as far as the executive branch is concerned.
>
> Notwithstanding Supreme Court caselaw and decades of practice, DHS now takes the position that anyone who is in the country without having been legally "admitted"—regardless of how long they have been here—falls under 8 U.S.C. § 1225(b), which mandates detention. *See Romero v. Hyde*, —— F. Supp. 3d ——, -——, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025) ("[R]espondents' new interpretation is contrary to the agency's own implementing regulations, its published guidance, the decisions of its immigration judges (until very recently), decades of practice, the Supreme Court's gloss on the statutory scheme, and the overall logic of our immigration system." (internal citations omitted)). In other words, DHS now says that those who have entered the United States and those who have never entered are one and the same. And this about-face has been approved by the Board of Immigration Appeals ("BIA"). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025).

*Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV, 2025 WL 3085032, at *1 (W.D.N.Y. Nov. 4, 2025).

## DISCUSSION

The primary federal habeas corpus statute, 28 U.S.C. § 2241, confers subject-matter

jurisdiction upon the district courts (among other courts) to consider prisoners' claims of illegal detention. *See* 28 U.S.C. § 2241(a), (c)(1), (c)(3); *Rasul v. Bush*, 542 U.S. 466, 483-84 (2004), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Venue is appropriate in the District of Wyoming because Mr. Serrato is currently being detained within this district.

Mr. Serrato is challenging the legality of his detention in this federal habeas corpus action. To obtain habeas corpus relief, it is Mr. Serrato's burden to shown "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

The dispute in this matter concerns whether Mr. Serrato is being detained under 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). The District of New Mexico recently summarized these statutes in a helpful manner:

> The INA contemplates two detention regimes for noncitizens pending removal proceedings. The first, § 1225, states that "in the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall be* detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). This statute mandates detention for noncitizens to whom it applies. Noncitizens detained under § 1225 are not entitled to bond hearings. *See Jennings v. Rodriguez*, 583 U.S. 281, 297, 138 S. Ct. 830, 842 (2018).
>
> By contrast, § 1226 provides that "[o]n a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Subject to some limited exceptions for noncitizens with certain criminal charges, arrests, or the like, *see* § 1226(c), this section further provides that the Attorney General may release a noncitizen on bond or conditional parole. § 1226(a)(1)-(2). Under federal regulations, noncitizens detained under § 1226(a) are entitled to individualized bond hearings at the outset of detention. *Jennings*, 583 U.S. at 306, 138 S. Ct. at 847 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

*Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729, at *3 (D.N.M. Sept. 17, 2025) (all alterations in original) (internal footnotes omitted).

Respondents contend Mr. Serrato has been detained under § 1225(b)(2), which does not

entitle him to a bond hearing for potential release during the removal proceedings. Mr. Serrato contends he can only be legally detained under § 1226(a), which would guarantee him an individualized bond hearing. In examining the statutory language and considering the circumstances of this case, the Court finds problems with both parties' arguments. In the end, though, the Court determines § 1226(a) better fits Mr. Serrato's situation, and he has shown that he should receive an individualized bond hearing.

1. <u>8 U.S.C. § 1225(b)(2)</u>

This issue begins with understanding what each statute says and means to decipher which one better applies to Mr. Serrato's situation. Starting with § 1225, subparagraph (a)(1) says, "An alien present in the United States who has not been admitted … shall be deemed … an applicant for admission." 8 U.S.C. § 1225(a)(1). At the hearing, Mr. Serrato's counsel agreed Mr. Serrato is considered an "applicant for admission" under this definition. And subparagraph (b)(2) states in relevant part:

> Subject to [certain exceptions not applicable to Mr. Serrato], in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal proceedings].

8 U.S.C. § 1225(b)(2)(A). Under the plain language of this subparagraph, three requirements are necessary before it applies and demands detention pending removal proceedings:

(1) An "applicant for admission;"
(2) Who is "seeking admission;" and
(3) Who "is not clearly and beyond a doubt entitled to be admitted" to the United States.

*See, e.g., Garcia Cortes v. Noem*, No. 1:25-CV-02677-CNS, 2025 WL 2652880, at *3 (D. Colo. Sept. 16, 2025) ("§ 1225 imposes three conditions that must be satisfied for § 1225(b)(2)(A) to apply and justify mandatory detention"); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass.

2025) ("for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted'"); *see also Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute. It is well established that, when the statutory language is plain, we must enforce it according to its terms.") (citations omitted).

There is no evidence or allegation in this case suggesting Mr. Serrato is "seeking admission" as required by § 1225(b)(2)(A); that is, Respondents have not identified anything to suggest Mr. Serrato is "seeking" "the lawful entry … into the United States after inspection and authorization by an immigration officer," 8 U.S.C. § 1101(a)(13)(A). Indeed, Respondents' response brief never mentions or discusses the "seeking admission" portion of § 1225(b)(2)(A). (*See* ECF 18.) But the phrase "applicant for admission," as defined in § 1225(a), must mean something different than the phrase "seeking admission." It is a basic statutory interpretation principle that where Congress uses different language, it is intended to have a different meaning. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("And, usually at least, when we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning."). "As numerous courts have observed, if all 'applicant[s] for admission also are 'seeking admission,' then the words 'seeking admission' would be surplusage." *Alvarez Ortiz v. Freden*, --- F. Supp. 3d ---, 2025 WL 3085032, at *7 (W.D.N.Y. Nov. 4, 2025) (collecting cases).

Respondents in this case have never told the Court why Mr. Serrato qualifies as "seeking admission." The basic facts as understood by the Court do not suggest Mr. Serrato is "seeking"

"the lawful entry ... into the United States." Indeed, the Declaration of Jared Callahan, a Supervisory Detention and Deportation Officer for ICE, expressly asserts that Mr. Serrato "has remained in the United States yet did not file any applications or petitions before the immigration service in an attempt to regularize his presence in the United States." (ECF 18-1 p. 2.) It appears Mr. Serrato has never sought lawful entry into the United States. Instead, the opposite exists here—Mr. Serrato unlawfully entered the United States (a third time) and never sought legal authority to enter or remain here. Therefore, the Court cannot conclude he fits under § 1225(b)(2)(A). *See Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *5 (D. Colo. Oct. 24, 2025) ("Courts have found that '[n]oncitizens who are just "present" in the country..., who have been here for years upon years and never proceeded to obtain any form of citizenship[,]...are not "seeking" admission' under § 1225(b)(2)(A).") (quoting *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025)).

Respondents contend the U.S. Supreme Court case of *Jennings v. Rodriguez*, 583 U.S. 281 (2018), controls the outcome here, but it is not on point. The portions of the *Jennings* opinion relied upon by Respondents constitute background information or dicta that is not dispositive of Mr. Serrato's matter. In *Jennings*, the Supreme Court held:

> The Court of Appeals misapplied the canon [of constitutional avoidance] in this case because its interpretations of the three provisions at issue here are implausible. In Parts III–A and III–B, we hold that, subject only to express exceptions, §§ 1225(b) and 1226(c) authorize detention until the end of applicable proceedings. And in Part III–C, we hold that there is no justification for any of the procedural requirements that the Court of Appeals layered onto § 1226(a) without any arguable statutory foundation.

*Jennings*, 583 U.S. at 296-97. The questions in dispute in *Jennings* are not at issue in Mr. Serrato's case. The background and summarizations of §§ 1225 and 1226 in *Jennings* are helpful for understanding the statutes, but they do not directly answer the dispute in this case. And there are

just as many non-binding statements in *Jennings* that support Respondents' argument as contradict it. *Compare id.* at 287 ("Section 1225(b)(2) is broader. It serves as a catchall provision that applies to *all applicants for admission not covered by § 1225(b)(1)* (with specific exceptions not relevant here).") (emphasis added), *with id.* at 289 ("In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).") (emphases added).

Finally, as several other courts have noted, accepting Respondents' interpretation that § 1225(b)(2) applies to all "applicants for admission," including all noncitizens already residing within the interior of the United States, would render the 2025 Laken Riley Act meaningless. The Laken Riley Act amended § 1226(c) by adding the following category of people who must be detained pending removal proceedings:

> [A]ny alien who ... (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]

8 U.S.C. § 1226(c)(1)(E). But under Respondents' reading, any alien who is inadmissible under § 1182(a)(6)(A), 6(C), or (7) is also an "applicant for admission" under § 1225(a) and, therefore, already subject to detention without bond under § 1225(b)(2). Thus, this year's Laken Riley Act's addition to § 1226(c)(1) would be rendered meaningless under Respondents' argument in this case. "Indeed, 'if § 1225(b)(2) already mandated detention of any noncitizen who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless.'" *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *6 (D. Colo. Oct. 24, 2025) (quoting *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at

*4 (W.D. Ky. Sept. 19, 2025)). "It is a fundamental canon of statutory interpretation that courts should not 'construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous.'" *Town of Dutch John v. Daggett Cnty.*, 367 F. Supp. 3d 1290, 1301 (D. Utah 2019) (quoting *Bridger Coal Co./Pac. Minerals, Inc. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 927 F.2d 1150, 1153 (10th Cir. 1991)).

Based on the language of the statute, the Court cannot conclude that Mr. Serrato is properly detained under 8 U.S.C. § 1225(b)(2).

2. **8 U.S.C. § 1226(a)**

Mr. Serrato's detention under § 1226(a) is not a perfect fit with the statutory language, either. In the end, though, the Court finds it be the more applicable of the two choices argued in this case.[2] Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
>   (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>   (B) conditional parole; but
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a). Subsection (c), referenced in subsection (a), concerns the detention of noncitizens charged or convicted of certain crimes, which is not applicable in Mr. Serrato's case.

---

[2] There is no contention here that, under the INA, Mr. Serrato could not be arrested and subject to detention pending removal proceedings. The parties in this case only dispute whether Mr. Serrato's arrest and detention was under § 1225(b)(2) or § 1226(a).

Mr. Serrato has not shown his arrest and detention was "[o]n a warrant issued by the Attorney General." Instead, at the hearing, his counsel argued such a warrant should have been issued, but there's no evidence of one here. For two reasons, the Court determines § 1226(a) is still the better fit for Mr. Serrato's circumstances despite the lack of Attorney General warrant.

First, were the Court to hold that the lack of Attorney General warrant is an automatic bar to the applicability of § 1226(a), it would have the negative effect of encouraging such a warrant not to issue in cases like Mr. Serrato's. In other words, if, like in this case, the Government decides it wants to hold a noncitizen without bond under § 1225(b)(2), then it simply needs to avoid issuing a warrant. Nothing exists to suggest Congress intended to permit that sort of legal gamesmanship, and the Court will not countenance it.

Second, as a plethora of federal district court cases have recently pointed out, and as supported by U.S. Supreme Court dicta, the INA statutes were written and arranged so that § 1225 primarily applied to noncitizens who were encountered at or near their entry into the United States (whether lawful or unlawful), while § 1226 primarily applied to noncitizens who were already within the interior of the United States, often, like Mr. Serrato, for long periods of time. *See, e.g., Nielsen v. Preap*, 586 U.S. 392, 396-97 (2019) (stating that § 1226(a) "applies to most such aliens" who are "present in the country" but removable); *Jennings*, 583 U.S. at 289 (§ 1226(a) and (c) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings"); *Alvarez Ortiz v. Freden*, --- F. Supp. 3d ---, 2025 WL 3085032, at *1 (W.D.N.Y. Nov. 4, 2025) ("8 U.S.C. § 1225, covering noncitizens when they arrive at the border or when they enter illegally and are caught very close to the border, and 8 U.S.C. § 1226, covering noncitizens who successfully have entered the United States—whether legally or illegally"). For decades, the Government's relevant agencies operated under and enforced this statutory scheme.

*See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled … will be eligible for bond and bond redetermination."). As noted earlier, the Court understands the United States Department of Homeland Security, supported by the Board of Immigration Appeals, has recently changed its decades-long approach, but neither Respondents here nor the decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sep. 5, 2025), persuade this Court that the prior understanding and application of the statutory scheme was erroneous or broken. "The Court joins the many other courts nationwide who have declined to accept Respondents' novel new interpretation of decades-old law." *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *7 (D. Colo. Oct. 24, 2025) (collecting cases).

Consequently, the Court concludes 8 U.S.C. § 1226(a) better applies to Mr. Serrato's case, and it guarantees him an individualized bond hearing, which he has not received.

### 3. <u>Remedy</u>

Mr. Serrato contends the appropriate remedy for his lack of bond hearing under § 1226(a) is to order his immediate release or alternatively to order Respondents to provide him a bond hearing at which Respondents "will bear the burden to demonstrate by clear and convincing evidence that he is a danger to the community or a flight risk to" to justify continuing his detention pending removal proceedings. (ECF 1 p. 12; *see* ECF 19 pp. 5-8.)

In determining an appropriate remedy for a due process violation, such as Mr. Serrato's lack of § 1226(a) bond hearing, federal district courts have often applied the three factors set out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See, e.g., Molina Ochoa v. Noem*, No. 1:25-CV-00881-JB-LF, 2025 WL 3125846, at *11 (D.N.M. Nov. 7, 2025). The Tenth Circuit has

previously noted that the three *Mathews v. Eldridge* factors are helpful "[t]o determine what process is constitutionally due." *J.B. v. Washington Cnty.*, 127 F.3d 919, 924 (10th Cir. 1997). Because Mr. Serrato argued for the application of the *Mathews v. Eldridge* factors in this case, the Court will assume without deciding that they apply to Mr. Serrato's lack of § 1226(a) bond hearing. And in doing so, the Court concludes Mr. Serrato's requested remedies ask too much.

The three *Mathews v. Eldridge* considerations are:

(1)  "the private interest that will be affected by the official action;"

(2)  "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and

(3)  "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

424 U.S. at 335.

Mr. Serrato's private interest in having a § 1226(a) bond hearing, and the associated potential release during removal proceedings, is reasonably strong. "The private interest at stake here is freedom from detention." *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1182 (D. Colo. 2024). Somewhat mitigating to this first factor, though, is the current duration of Mr. Serrato's detention—about four weeks now. "[T]he longer the duration of detention, the greater the deprivation of a noncitizen's private interest." *Id.* In *L.G.*, the district court determined the prolonged detention of the petitioner there, over 30 months, enhanced the petitioner's individual liberty interest. *Id.* at 1183. Here, the duration of Mr. Serrato's current detention does not approach that found to be so problematic in *L.G.*, or even that in *Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729, at *7 (D.N.M. Sept. 17, 2025), where the petitioner had been detained without a § 1226(a) bond hearing for almost three months.

previously noted that the three *Mathews v. Eldridge* factors are helpful "[t]o determine what process is constitutionally due." *J.B. v. Washington Cnty.*, 127 F.3d 919, 924 (10th Cir. 1997). Because Mr. Serrato argued for the application of the *Mathews v. Eldridge* factors in this case, the Court will assume without deciding that they apply to Mr. Serrato's lack of § 1226(a) bond hearing. And in doing so, the Court concludes Mr. Serrato's requested remedies ask too much.

The three *Mathews v. Eldridge* considerations are:

(1)  "the private interest that will be affected by the official action;"

(2)  "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and

(3)  "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

424 U.S. at 335.

Mr. Serrato's private interest in having a § 1226(a) bond hearing, and the associated potential release during removal proceedings, is reasonably strong. "The private interest at stake here is freedom from detention." *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1182 (D. Colo. 2024). Somewhat mitigating to this first factor, though, is the current duration of Mr. Serrato's detention—about four weeks now. "[T]he longer the duration of detention, the greater the deprivation of a noncitizen's private interest." *Id.* In *L.G.*, the district court determined the prolonged detention of the petitioner there, over 30 months, enhanced the petitioner's individual liberty interest. *Id.* at 1183. Here, the duration of Mr. Serrato's current detention does not approach that found to be so problematic in *L.G.*, or even that in *Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729, at *7 (D.N.M. Sept. 17, 2025), where the petitioner had been detained without a § 1226(a) bond hearing for almost three months.

The Court finds the second *Mathews v. Eldridge* factor—the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards—supports the Court ordering an expedited § 1226(a) bond hearing. However, in Mr. Serrato's case, at least, the Court does not find the risk of erroneous deprivation warrants his immediate release or shifting the burden to the Government at the bond hearing. This simply is not a case where Mr. Serrato has been languishing in detention for months (or years) with no movement on his removal proceeding; he has his initial hearing on his removal proceeding scheduled to take place in about a week. The Government should have granted Mr. Serrato an individualized bond hearing under § 1226(a) in a timelier manner, which warrants the Court ordering an expedited bond hearing, but this is not a matter where the only way to right the wrong is to immediately release Mr. Serrato or shift the burden onto the Government at the bond hearing.

For the final *Mathews v. Eldridge* factor, requiring an expedited § 1226(a) bond hearing creates additional burdens upon the Government, which the Court finds necessary to end the deprivation to Mr. Serrato of his opportunity to demonstrate his eligibility for release on bond. However, the Court does not see it appropriate in this case to further increase the burdens on the Government by ordering Mr. Serrato's immediate release or require the Government to shoulder any burden at the bond hearing.

In sum, Mr. Serrato's detention under § 1226(a) lawfully entitles him to an individualized bond hearing whereupon it is his burden to show he does not pose a danger and is not a flight risk. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) ("To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings.") (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (2020); *In re Adeniji*, 22 I. & N. Dec.

1102, 1113 (BIA 1999)). The Court finds such to be the appropriate remedy in this case. *See Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *8 (D. Colo. Oct. 24, 2025) (granting petition for habeas corpus and requiring the respondents to provide the petitioner with bond hearing).

## CONCLUSION AND ORDER

The circumstances of Mr. Serrato's detention establish that he is more properly being detained under 8 U.S.C. § 1226(a) rather than 8 U.S.C. § 1225(b)(2). He has not received the individualized bond hearing guaranteed to him under § 1226(a). To correct this due process deficiency, the Court will order that he receive such a hearing in an expeditious manner.

**IT IS THEREFORE ORDERED** that Octavio Duran Serrato's Petition for Writ of Habeas Corpus (ECF 1) is **GRANTED**. Respondents shall provide an individualized bond hearing under 8 U.S.C. § 1226(a) to Mr. Serrato **within seven (7) calendar days** of the date of this Order. As Mr. Serrato has an initial hearing on his removal proceeding currently set for November 24, 2025, in Las Vegas Immigration Court (ECF 18-1 p. 3), Respondents may, but are not required to, combine his § 1226(a) individualized bond hearing with that initial hearing.

**IT IS FURTHER ORDERED** that if Respondents fail to provide Mr. Serrato with an individualized bond hearing under § 1226(a) within seven (7) calendar days of this Order, Respondents shall immediately release Mr. Serrato from detention upon his posting of a $1,500 bond. *See* 8 U.S.C. § 1226(a)(2).

**IT IS FURTHER ORDERED** that this Court's earlier restraint against Respondents transferring Mr. Serrato outside the District of Wyoming (ECF 3 p. 3) is hereby **LIFTED AND CANCELED** so that Mr. Serrato may be transported to Nevada for his removal proceedings.

**IT IS FINALLY ORDERED** that Respondents shall file a status report **within ten (10)**

**calendar days** of the date of this Order that certifies compliance with this Order. The status report shall identify where and when the individualized bond hearing occurred, whether release on bond was granted or denied, and the reasons for any such denial. Alternatively, if Respondents have failed to provide the required expedited bond hearing, the status report shall indicate the date, time, and circumstances of when they release Mr. Serrato from detention. The Court shall retain jurisdiction over this matter to the extent necessary to ensure this Order is carried into effect.

**ORDERED**: November 17, 2025.

Scott W. Skavdahl
United States District Judge